UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH ABBAS, individually, and DOWNERS MOTORS, INC., | )<br>)<br>) |
| Plaintiffs, | ) 11 C 8379<br>)<br>) Judge Feinerman |
| vs. | )<br>) |
| RBS CITIZENS NATIONAL ASSOCIATION, as successor by merger to Charter One Bank, N.A., | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Joseph Abbas and Downers Motors, Inc. brought this action in the Circuit Court of Cook County, Illinois, against Defendant RBS Citizens National Association. RBS removed the suit on diversity grounds, and now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion is denied. However, because Plaintiffs' claims are an attack on and inextricably intertwined with a final state court judgment entered in a case involving all three parties here, and because Plaintiffs had a reasonable opportunity to present their claims in state court, the *Rooker-Feldman* doctrine divests this court of jurisdiction. The case therefore is remanded to state court.

**Background**

A complaint's well-pleaded facts generally are assumed true on Rule 12(b)(1) and Rule 12(b)(6) motions, and all reasonable inferences are drawn in the plaintiff's favor. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010); *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004). In evaluating a motion to dismiss, the court must consider "the

complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Orders entered and filings made in other courts are subject to judicial notice, as are "adjudicative facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *United States v. Stevens*, 500 F.3d 625, 628 n.4 (7th Cir. 2007) (internal quotation marks omitted); *see also Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 676 n.2 (7th Cir. 2009). The following facts are stated as favorably to Plaintiffs as permitted by the complaint and other materials that may be considered on a Rule 12(b) motion.

Downers was a car dealership and Abbas was its president. In October 2005, Downers (then known as Luxury Motors, Inc.) entered into a financing loan and security agreement with RBS's predecessor to finance the purchase of vehicles for Downers and another Abbas dealership. Abbas personally guaranteed the loan.

After Abbas and Downers defaulted on their obligations in February 2009, RBS retained Premier Performance Group ("PPG"), a collateral management company, to manage the dealerships' inventories. PPG had no experience in preserving assets or keeping car dealerships in business. In March 2009, with RBS's consent, Abbas entered into a management agreement with Import Acquisition Motors ("IAM"), which was interested in buying the dealerships. At RBS's behest, PPG took daily inventories at both dealerships and excluded from those inventories any vehicles traded in by Downers' customers.

RBS received daily reports regarding the dealerships' inventories and sales. According to Abbas and Downers, the reports should have alerted RBS to PPG's inadequate performance. Abbas and Downers charge that PPG's mismanagement caused the debt they owed to RBS to

increase from approximately $2 million to over $9 million. They further allege that RBS approved the sale of at least six vehicles for less than their "inventory price," a term defined as the amount Downers paid for the vehicle, which is the amount Downers borrowed from RBS to purchase the vehicle. In one such instance, RBS approved the sale of a new Bentley Azure to an RBS employee for $64,400, even though Downers owed RBS $232,000 for the vehicle. RBS also approved the sale of a used Bentley Continental to a dealership owned by one of IAM's principals for $55,000, even though Downers owed RBS $115,000 for the vehicle.

In the meantime, on March 11, 2009, RBS filed suit in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, against Downers, Abbas, and three other defendants. The suit sought to recover over $18 million from Abbas and Downers on the defaulted loan and guaranty agreements. Doc. 20-5. Abbas and Downers filed affirmative defenses alleging that RBS, among other things: (a) "orchestrat[ed] a default" under the loan and guaranty agreements, Doc. 20-7 at ¶ 16; (b) did not give them "credit … [for] vehicles that were received as trade-ins … caus[ing them] to have to pay down the [loan] as if no trade-in had been received[,]" *id*. at ¶ 39; (c) "retained [PPG] to manage inventory that was subject to the lien of RBS[,]" *id*. at ¶ 46; (d) "took over the management and control of the dealerships[,]" *id*. at ¶ 57; (e) through its agent, PPG, "directed all dealership revenues into [a] new operating account at RBS and controlled payments out of th[e] account[,]" *id*. at ¶ 59; (f) through its agent, PPG, "took control of the titles to all [the dealerships'] vehicles[,]" *id*. at ¶ 60; (g) along with PPG, "mismanage[d]" the dealerships, *id*. at ¶ 88; and (h) seized their vehicles and wrongfully conveyed title for less than fair market value, *id*. at ¶¶ 90-91. The defenses sought to abrogate, in whole or in part, Abbas and Downers's alleged liability to RBS. *Id*. at ¶ 92.

On April 12, 2010, RBS moved to dismiss the affirmative defenses, arguing that Abbas and Downers waived in the loan and guaranty agreements their right to assert those defenses, that the defenses were not true affirmative defenses, and that the defenses were not sufficiently pled under Illinois law. Doc. 20-8. Rather than oppose the motion, Abbas and Downers withdrew their affirmative defenses on July 1, 2010. Doc. 20-13 at 2-3. RBS then moved for summary judgment, seeking $12,021,098.90 plus interest, costs, and expenses. Doc. 20-14. On March 14, 2011, the state court entered judgment in favor of RBS and against Abbas and Downers for $12,357,098.90. Doc. 20-1.

Abbas and Downers filed this suit five months later. As relief, they seek several million dollars in damages to offset the debt they owe to RBS. Doc. 13 at p. 8.

## Discussion

RBS moves to dismiss this suit under Rule 12(b)(1), arguing that the *Rooker-Feldman* doctrine deprives the court of subject matter jurisdiction, and under Rule 12(b)(6), arguing that the suit is barred by res judicata. Subject matter jurisdiction will be addressed first. *See Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011) ("We will take up the[] jurisdictional issue first to demonstrate that this case is properly before us."). Only if the court has jurisdiction will it address res judicata, a merits issue. *See Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 535 (7th Cir. 2004).

The *Rooker-Feldman* doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims 'inextricably intertwined' with state court determinations." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). *Rooker-Feldman* is a "narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (quoting *Lance v. Dennis*, 546 U.S. 459, 464 (2006)) (internal quotation marks omitted). "The doctrine does not prevent state-court losers from presenting independent claims to a federal district court, even if the new claims involve questions related to those in the original state court proceedings." *Crawford*, 647 F.3d at 645. The "pivotal inquiry in applying the doctrine is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir. 2002).

Abbas and Downers (who henceforth will be referred to together as "Downers") do not dispute that their claims here are inextricably intertwined with the claims resolved in the state court case brought by RBS. Instead, Downers invokes an exception to *Rooker-Feldman* that "allows plaintiffs to litigate in the federal system if they were not afforded a 'reasonable opportunity' to raise their claims in state court." *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 901-02 (7th Cir. 2010). The "reasonable opportunity" exception applies where "some factor independent of the actions of the opposing party [here, RBS] ... precluded the litigants [here, Downers] from raising their … claims during the state court proceedings." *Taylor*, 374 F.3d at 533 (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999)).

Downers blames PPG, a non-party in the state court suit, for depriving it of a reasonable opportunity to press its claims there. In response to a subpoena issued by Downers in state court, PPG produced seventeen documents. In April 2011, when PPG produced thousands of documents in a related federal case, *RBS Citizens, N.A. v. Bentley Motors, Inc.*, No. 10 C 2929 (N.D. Ill. filed Apr. 16, 2010), Downers first realized that PPG's response to its state court subpoena was incomplete. This realization occurred slightly more than thirty days after the state

court entered judgment, after the time for seeking ordinary appellate review had passed. *See* Ill. Sup. Ct. R. 303(a)(1) (appeals from final civil judgments must be filed "within 30 days after the entry of the final judgment appealed from"). According to Downers, PPG's failure to properly respond to the subpoena prevented it from "fully investigating its defenses and bringing all of [its] claims before the state court," Doc. 26 at 6, and thus was an independent factor that prevented it from pursuing its claims there.

This argument fails to persuade. "In deciding whether [a plaintiff] lacked a reasonable opportunity to present [its] claims in state court, [the court must] focus on difficulties caused not by opposing parties, but by state-court rules or procedures." *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007); *see also O'Malley v. Litscher*, 465 F.3d 799, 803 (7th Cir. 2006) ("If something in the state's procedures had prevented O'Malley from raising his constitutional challenges to the defendants' actions, we would recognize an exception from *Rooker-Feldman*."); *Taylor*, 374 F.3d at 534-35 (same). Here, Downers points to a difficulty caused not by a state court rule or procedure, but by the alleged misconduct of a non-party, PPG. Downers cites no legal authority for the proposition that the "reasonable opportunity" exception extends to situations where a non-party's actions or inactions are alleged to have deprived the state court loser of a reasonable opportunity to present its claims in state court. It is doubtful that the "reasonable opportunity" exception will be so extended given the Seventh Circuit's warning that the exception itself "is of questionable viability" in light of *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). *Kelley*, 548 F.3d at 607; *see also Allen v. IRMCO Mgmt. Co.*, 420 F. App'x 597, 599 (7th Cir. 2011).

Even if the exception theoretically could be so extended, it would not apply in this case. The reason is plain: Downers *did* present in state court, by way of its affirmative defenses, the

very claims it raises in this lawsuit. Downers alleges here that PPG mismanaged Plaintiffs' dealerships, that trade-in vehicles were not properly accounted for, and that RBS sold vehicles for less than their inventory prices—all resulting in an increase in the amount of debt owed by Downers to RBS. Downers' affirmative defenses in state court likewise alleged that RBS did not credit it for trade-in vehicles, that RBS and PPG mismanaged the dealerships, and that RBS wrongfully sold vehicles for less than their worth—again, all resulting in Downers owing a sizeable debt to RBS that it should not have owed. Had Downers defended rather than withdrawn its affirmative defenses, the state court could have considered whether the defenses warranted a reduction in the amount it owed RBS. Because Downers could have, and actually did, raise in state court the grounds presented here for why it owed RBS less than what the state court held that it owed, its claims here are barred by *Rooker-Feldman*. *See Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) ("If the plaintiff could have raised the issue in state court, the claim is barred under *Rooker-Feldman*."); *Spencer v. Mortg. Acceptance Corp.*, 2006 WL 1302413, at *3 (N.D. Ill. May 4, 2006) ("In entering the judgment of foreclosure, the Circuit Court of Cook County necessarily rejected Spencer's claims and affirmative defenses.").

Downers presses the opposite result by arguing that PPG's incomplete response to Downers' state court subpoena caused it to incorrectly believe "that PPG's role as agent of RBS was limited to a universe of only seventeen documents." Doc. 26 at 6. It is inconceivable that PPG's response to the state court subpoena interfered with Downers' ability to pursue its affirmative defenses in state court. Downers filed its defenses in on January 27, 2010, Doc. 20-7 at 2; RBS moved to dismiss the defenses on April 12, 2010, Doc. 20-8 at 2; and Downers withdrew its defenses on July 1, 2010, Doc. 20-13 at 2. Downers did not serve PPG with its subpoena until *four months later*, on November 16, 2010. Doc. 26 at 9. It necessarily follows

that PPG's response to the subpoena could not possibly have affected Downers' decision to withdraw its affirmative defenses. And even if Downers was contemplating a motion to reinstate its affirmative defenses and decided against that course upon receiving PPG's response to its subpoena, Downers still had a viable option once it realized in April 2011 that PPG's response was incomplete—it could have filed a petition under 735 ILCS 5/2-1401, which allows a party who missed the appeal deadline to seek relief from the judgment based on newly discovered evidence. *See S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 693 N.E.2d 338, 341 (Ill. 1998) ("Section 2-1401 of the Code of Civil Procedure outlines a procedure by which final orders and judgments may be vacated by the trial court more than 30 days following their entry, if the petition to vacate is not filed later than two years after entry of the judgment."); *In re Marriage of Goldsmith*, 962 N.E.2d 517, 522 (Ill. App. 2011) ("To set aside a judgment based on newly discovered evidence, the petitioner must show the new evidence was not known to her at the time of the proceeding and could not have been discovered by the petitioner with the exercise of reasonable diligence."); *People v. Burrows*, 665 N.E.2d 1319, 1320-21, 1325 (Ill. App. 1996) (affirming the trial court's grant of a new trial pursuant to 735 ILCS 5/2-1401 in light of newly discovered evidence). Downers' failure to pursue that option forecloses its appeal to the "reasonable opportunity" exception to *Rooker-Feldman*. *See Gilbert*, 591 F.3d at 901-02 (rejecting the plaintiff's invocation of the "reasonable opportunity" exception where the plaintiff presented his claim to the Illinois courts but failed to pursue all potentially available appellate options); *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1334-35 (11th Cir. 2001) (holding that claims were barred by *Rooker-Feldman* where the plaintiffs had a reasonable opportunity to present those claims in prior state court proceedings, including the right to appeal to the state

supreme court); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202-03, 203 n.11 (4th Cir. 1997) (same).

Because Downers' invocation of the "reasonable opportunity" exception fails, *Rooker-Feldman* applies and deprives this court of subject matter jurisdiction. *See Taylor*, 374 F.3d at 535. And lacking jurisdiction, the court may not address the merits of this suit, including RBS's argument that res judicata bars Downers' claims. *See ibid.* ("where *Rooker-Feldman* applies, the res judicata claim must not be reached") (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)) (internal quotation mark omitted).

The only issue that remains is the proper disposition of this case. RBS argues that application of the *Rooker-Feldman* doctrine warrants a dismissal *with* prejudice. Doc. 20 at 13; Doc. 28 at 10. There are two flaws with this argument. First, when a case is dismissed for lack of subject matter jurisdiction, the dismissal must be *without* prejudice. *See In re IFC Credit Corp.*, 663 F.3d 315, 320 (7th Cir. 2011) ("dismissal for want of jurisdiction, not being an adjudication on the merits, is without prejudice"). Second, and more importantly, when a case is filed in state court and removed to federal court, and when the federal court finds that it lacks subject matter jurisdiction, the appropriate disposition (with narrow exceptions not pertinent here) is a remand to state court, not a dismissal. *See Dempsey v. JP Morgan Chase, N.A.*, 272 F. App'x 499, 502 (7th Cir. 2008) (instructing the district court, pursuant to 28 U.S.C. § 1447(c), to remand to state court a claim barred by the *Rooker-Feldman* doctrine); *Taylor*, 374 F.3d at 535 ("the district court's decision to remand for lack of subject matter jurisdiction [on *Rooker-Feldman* grounds] was correct"). Accordingly, this case is remanded to state court.

**Conclusion**

Abbas and Downers filed this suit in state court presumably because they wanted a state forum, and RBS removed the case because it wanted a federal forum. After the removal, RBS moved to dismiss on *Rooker-Feldman* grounds, believing that application of the doctrine would result in a dismissal with prejudice. Apparently sharing that belief, Abbas and Downers argued that *Rooker-Feldman* does not apply. *Rooker-Feldman* does apply, but contrary to the parties' beliefs, the result is a remand to state court, not a dismissal. So, at the end of the day, RBS fought for, and Abbas and Downers fought against, a disposition—the case proceeding in state court, with the state court deciding the merits—that RBS opposes and that Abbas and Downers favor.

RBS's motion to dismiss is denied in part (as to dismissal under Rule 12(b)(1)) and denied without prejudice as moot in part (as to dismissal under Rule 12(b)(6)). This case is remanded to the Circuit Court of Cook County, Illinois, where RBS may renew its argument that res judicata bars Plaintiffs' claims and assert any other defenses it might have.

May 29, 2012

_____
United States District Judge